IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLAKE MOTTER, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :   Case No.: 3:22-cv-123 |
| | : |
| LOCKHEED MARTIN AEROPARTS, INC., | : |
| | : |
|     Defendant. | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Blake Motter, by and through the undersigned counsel, J.P. Ward & Associates, LLC. and, specifically, Sammy Y. Sugiura, Esquire, who files the within Complaint in Civil Action against Defendant, Lockheed Martin AeroParts, Inc., of which the following is a statement:

## PARTIES

1. Plaintiff, Blake Motter (hereinafter "Plaintiff"), is an adult individual who currently resides at 166 Rose Road, Shellsburg, Pennsylvania 15559.

2. Defendant, Lockheed Martin AeroParts, (hereinafter "Lockheed" or "Defendant") is a for-profit corporation organized under Pennsylvania law with its principal place of business located at 211 Industrial Park, Harris Road, Johnstown, Pennsylvania 15904.

3. At all relevant times, Lockheed employed more than 15 employees and was a covered employer as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e-2(a)(1) (hereinafter, "Title VII") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 (hereinafter, the "PHRA").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States and Plaintiff seeks redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

6. In June 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff's charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

8. By letter dated May 23, 2022, the EEOC notified Plaintiff of his right to file a civil action against Defendant.

9. In accordance with 43 P.S. § 962(c)(2) of the Pennsylvania Human Relations Act, Plaintiff is contemporaneously serving a copy of this Complaint on the PHRC.

10. Accordingly, Plaintiff has exhausted his administrative remedies under federal and state law.

## FACTUAL BACKGROUND

11. On August 13, 2018, Mr. Motter began his employment with Defendant as a Structural Assembler.

12. Immediately after Plaintiff began his employment with Defendant, he was subjected to sexual harassment by a coworker/lead, Jared Anderson (hereinafter "Mr. Anderson").

For example, whenever Plaintiff was scheduled for time off, Mr. Anderson would ask Plaintiff in front of other employees "are you guys going to rub baby oil on each other?" and "are you guys going to go touch each other?"

13.   In addition, whenever Plaintiff would leave work in Mr. Anderson's presence, Mr. Anderson would use homosexual-related slurs towards Plaintiff to disparage him in front of other employees.

14.   Defendant was aware of Mr. Anderson's behavior because he had harassed and used homosexual-related slurs towards another coworker (hereinafter "Coworker 1").

15.   Coworker 1 reported the inappropriate conduct to Supervisor, Keith Thompson, (hereinafter, Mr. Thompson).

16.   Coworker 1 and Mr. Thompson had a private discussion about the homosexual comments.

17.   Mr. Thompson allegedly notified Mr. Anderson of the report, but no corrective actions were taken to resolve the situation, and Mr. Anderson was not reprimanded for his behavior.

18.   Following the meeting with Mr. Thompson, Mr. Anderson continued to harass and make homosexual-related slurs towards Coworker 1 and others.

19.   Mr. Anderson's harassing and discriminatory behavior continued when employees returned to the office, following the COVID-19 pandemic, in March 2021.

20.   Upon his return to the workplace, Mr. Anderson asked Mr. Motter, "how long are you staying this time?" Mr. Anderson then asked, "did you see your bid sheet?"

21. Mr. Motter was unaware of the document Mr. Anderson was referring to. After investigating further, Mr. Motter was notified of a Job Bidding Application ("Bid Sheet") that had been filled out in Mr. Motter's name by Mr. Anderson.

22. Mr. Anderson provided this document to Structural Assemblers, Todd Devico, (hereinafter, "Mr. Devico"), Brian Siwula, (hereinafter, "Mr. Siwula"), and Jamison Stohon, (hereinafter, "Mr. Stohon").

23. The Bid Sheet stated that it was directed "to Todd's [Mr. Devico's] mom's a**" and that Mr. Motter was applying for the position of "male stripper", with his current job title as a "K-Y Tester" in the "gay tour guide" department. Upon information and belief, "K-Y Tester" is meant to refer to a specific brand of lubricant used for sexual activity.

24. The Bid Sheet also stated that Mr. Motter's technical skills included being a "stripper at Dewdrop Inn" and that his related experience included "bachelor parties and back rubs for Mr. Stohon, Doug Black, and Harry Potter." Other information in the Bid Sheet included calling Mr. Motter a "goat farmer" and "gay firefighter" and stating that he had "highlighted hair and beard", "tramp stamp", and "belly button ring." Lastly, in place of the Bidder's Signature, Mr. Anderson wrote, "I'm in love with Doug Black."

25. At this time, Mr. Motter discovered that Mr. Anderson had been harassing and discriminating against another coworker ("Coworker 2"). Coworker 2 notified Defendant's Human Resources Department about Mr. Anderson, but nothing was done.

26. As a result of Defendant's persistent refusal to address Mr. Anderson's discriminating and harassing behavior, Mr. Motter spoke to Mr. Anderson directly because he believed that reporting this issue to Defendant would not stop the harassment.

27. When Mr. Motter spoke with Mr. Anderson and told him that he didn't appreciate the things he wrote on the Bid Sheet, Mr. Anderson replied, "it was just a joke." Mr. Anderson refused to apologize or assure Mr. Motter that he would refrain from continuing with his discriminatory and harassing behavior.

28. In May 2021, after Mr. Anderson had continued to sexually harass and discriminate against Mr. Motter, Mr. Motter reported these issues to a human resources representative of Defendant ("Mr. Pat").

29. Mr. Pat told Mr. Motter that he would address the issue and took the Bid Sheet from Mr. Motter. Mr. Motter then asked for a copy of the Bid Sheet because he wanted to pursue discrimination and harassment claims outside of the office.

30. A few weeks later, in late May 2021, Mr. Motter was asked to meet with a member of Defendant's Global Diversity & Inclusion EEO Investigations Team. During that meeting, Mr. Motter discussed the continuing harassment and discriminatory conduct he was subjected to, by Mr. Anderson, his repeated reports to Mr. Pat, and the emotional impact this was all having on him.

31. Following this meeting, Mr. Motter reported additional harassing and discriminatory incidents involving Mr. Anderson to Defendant's Global Diversity & Inclusion EEO Investigations Team. Again, Defendant took no action. In fact, Mr. Anderson continued to publicly mock and harass Mr. Motter in the presence of coworkers.

32. On or about June 1, 2021, Mr. Anderson told numerous coworkers that "I'm getting [Mr. Motter] moved if it's the last thing I do."

33. Thereafter, Mr. Anderson took actions which prevented Mr. Motter from performing the essential duties of his position. In addition, Mr. Anderson continued to harass and discriminate against Mr. Motter. All of this was done to force Mr. Motter to quit his job.

34. In November 2021, after Defendant forced Mr. Motter to endure months and months of harassing, discriminatory, and abusive behavior at work, Mr. Motter was forced to leave his job with Defendant.

35. By pushing Mr. Motter out of his job, Defendant failed to follow its own written policies and practices concerning employees with disabilities.

36. It is believed that Defendant acted willfully and in reckless disregard of Mr. Motter's rights under Title VII and the PHRA.

## COUNT I
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE PENNSYLVANIA HUMAN RELATIONS ACT

37. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

38. The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her sex." *Bryant v. Wilkes-Barre Hops., Co.,* LLC, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

39. In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondent superior liability." *Senador* at *25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

40. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

41. The acts and omissions by Defendant that are described in this Complaint constitute sexual discrimination and/or harassment under Title VII.

42. Because Plaintiff is able to state a prime facie case for sex discrimination and hostile work environment under Title VII, so too will he be able to state such a claim under the PHRA.

43. The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

44. Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

45. Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

46. As noted above, Mr. Motter was subjected to a hostile work environment for years while working for Defendant and reported these issues to Defendant. Despite Mr. Motter's numerous reports, no action was taken by Defendant to address these issues.

47. The hostile work environment materially affected the terms of Mr. Motter's employment. A reasonable person should not be expected to endure such conditions, and those conditions forced Mr. Motter to leave his job with Defendant.

48. Defendant's actions were intentional, knowing, wanton, and willful.

49. As a direct and proximate cause of the aforementioned conduct, Mr. Motter suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff hereby respectfully requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, and any other compensatory and punitive damages, costs, and reasonable attorney's fees.

## COUNT II
## HARASSMENT BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

50. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

51. Under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

52. When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." Langley v. Merck & Co., 186 Fed Appx. 258 (3d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 36 L. E.D. 29 668 (1973).  See also Makky v. Chertoff, 542 F.3d 205, 214 (3d Cir. 2008).

53. The pertinent section of Title VII provides: "It shall be unlawful . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). At issue here is what it means for an employer to discriminate against one of its employees "because of" that employee's "sex." *Ellingsworth v. Hartford Fire Ins. Co.,* CIVIL ACTION NO. 16-3187, 6 (E.D. Pa. Mar. 22, 2017)

54. The acts and omissions by Defendant that are described in this complaint constitute sexual harassment in violation of Title VII.

55. As a direct and proximate result of the aforementioned conduct, Mr. Motter suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff, Blake Motter, hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Plaintiff requests this Court award him back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**JURY TRIAL DEMANDED UPON ALL MATTERS DEEMED TRIABLE.**

                                          Respectfully Submitted,

                                          **J.P. WARD & ASSOCIATES, LLC**

Date: Aug 5, 2022                           By: _____
                                                Sammy Sugiura (Pa. I.D. No. 209942)

                                                J.P. Ward & Associates, LLC
                                                The Rubicon Building
                                                201 South Highland Avenue
                                                Suite 201
                                                Pittsburgh, PA 15206
                                                Counsel for Plaintiff